UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PAULA GALVIN, Personal Representative of the Estate of Sally Russell, | * * * * * | |
| Plaintiff, | * * | Civil Action No. 24-cv-10602-ADB |
| v. | * * | |
| CENTRAL ASSISTED LIVING LIMITED PARTNERSHIP D/B/A THE ARBORS AT STOUGHTON, MAGNOLIA MANAGEMENT COMPANY, LLC, HARBOR HEALTH SERVICES, INC., DR. ASHMEET BHATIA, | * * * * * * * * | |
| Defendants. | * * * | |

# MEMORANDUM AND ORDER

BURROUGHS, D.J.

Paula Galvin ("Plaintiff"), daughter of Sally Russell ("Ms. Russell") and Personal Representative of the Estate of Sally Russell, filed this medical negligence and wrongful death action in state court against Central Assisted Living Limited Partnership d/b/a The Arbors at Stoughton ("The Arbors"), Magnolia Management Company, LLC ("Magnolia Management Company"), Harbor Health Services, Inc. ("Harbor Health"), and Dr. Ashmeet Bhatia ("Dr. Bhatia") (collectively, the "Defendants"). See [ECF Nos. 1-4 ("First Amended Complaint" or "First Am. Compl."); 1-5 ("Second Amended Complaint" or "Second Am. Compl."); 1-6 ("Third

Party Complaint" or "Third Party Compl.")].[1]  After removing the case to this Court, Defendants Harbor Health and Dr. Bhatia moved to substitute the United States as Proper Party Defendant. [ECF No. 2].  For the reasons set forth below, the motion is GRANTED.

I.      BACKGROUND

   A.   Factual Background

Ms. Russell was a resident at The Arbors, a nursing home, when she suffered a seizure on April 3, 2019.  [First Am. Compl. ¶ 4].  She was treated at a hospital and then returned to The Arbors the same day.  [Id. ¶ 5].  That night, she suffered an unwitnessed fall and, after The Arbors staff found her, was transferred back to the hospital with "significant facial and head injuries."  [Id. ¶¶ 7-8].  A few weeks later, on April 24, 2019, Ms. Russell passed away.  [Id. ¶ 9].

After Ms. Russell's fall, Harbor Health, which operates five community health centers, [ECF No. 9-1 ("Reynard Decl.") ¶ 3], and provided primary medical care to Ms. Russell, [Second Am. Compl. ¶ 23; Third Party Compl. ¶ 9],[2] investigated her fall and determined that it likely resulted from a seizure, [Third Party Compl. ¶ 13].  Specifically, Harbor Health concluded that the root cause of the fall was "unintended discontinuation of seizure medication."  [Id.].

Defendant Dr. Bhatia, an employee of Harbor Health, was Ms. Russell's primary care doctor at The Arbors, and prescribed and managed Ms. Russell's medication, including her seizure medication.  [Second Am. Compl. ¶ 32; Third Party Compl. ¶ 12].

---

[1] Harbor Health and Dr. Bhatia's alleged wrongful acts pertain to Counts VII through XX of the Second Amended Complaint and Counts I through III of the Third Party Complaint.  [Second Am. Compl. at 4–7; Third Party Compl. at 3–4].

[2] Harbor Health was contracted by The Arbors to "provide[] and manage[] all skilled nursing and medical services and care to ["Program of All-Inclusive Care for the Elderly" ("PACE")] participants residing at The Arbors," which included Ms. Russell.  [Third Party Compl. ¶ 9].

As relevant to the present case, Ms. Russell was part of the PACE program, also known as the "Elder Services Plan" ("ESP") at Harbor Health. [ECF No. 5 ("Opp'n") at 1, 7]; see also [ECF No. 5-1 ("Reynard Dep. Tr.") at 189:14–21]. PACE, which is overseen by the Centers for Medicare & Medicaid Services ("CMS"), [Reynard Decl. ¶ 9], "provides comprehensive medical and social services to certain frail, elderly people (participants) still living in the community,"[3] [ECF No. 9 ("Reply") at 5–6 (quoting the CMS website)]. A PACE program "must be certified or approved by both federal and state agencies." [Reynard Decl. ¶ 9]. Participants of the program are usually eligible for both Medicare and Medicaid. [Id. ¶ 8].

### B. Procedural History

On July 24, 2023, Plaintiff filed the operative complaint in the Superior Court Department of the Trial Court, Norfolk Division, naming Harbor Health, Dr. Bhatia, The Arbors and Magnolia Management Company as defendants. See [Second Am. Compl.]. Then, on August 7, 2023, The Arbors filed a third-party complaint against Harbor Health in the state court action, alleging contractual and common law indemnification. See [Third Party Compl.]. On March 11, 2024, Defendants Harbor Health and Dr. Bhatia removed the case to this Court, [ECF No. 1], on the basis that, at the time of the alleged wrongful conduct, they were deemed employees of the Public Health Service ("PHS") and therefore covered under the Federal Tort Claims Act ("FTCA"), [id. ¶ 5; 28 U.S.C. §§ 1346(b), 2401(b), 2671-80]. The same day, Harbor Health and Dr. Bhatia moved to substitute the United States as Proper Party Defendant. [ECF

---

[3] Specifically, "PACE benefits typically include adult day care, dentistry, emergency services, home care, hospital care, laboratory and diagnostic testing, meals, medical specialty services, nursing home care, nutritional counseling, occupational therapy, physical therapy, prescription drugs, primary care (including doctor & nursing services), recreational therapy, social services, social work counseling, transportation and any other services deemed necessary to maintain or improve an individual enrollee's health." [Reynard Decl. ¶ 8].

3

Case 1:24-cv-10602-ADB   Document 11   Filed 06/17/24   Page 4 of 7

No. 2]. Plaintiff and Defendants The Arbors and Magnolia Management Company (the "Opposition Parties") filed a joint opposition on March 25, 2024, [Opp'n], and Defendants Dr. Bhatia and Harbor Health replied on April 15, 2024, [Reply].

## II.    DISCUSSION

The FTCA, as amended by the Federal Employees Liability Reform and Tort Compensation Act of 1988, "grants federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." Olivera-Pagan v. Manati Med. Ctr., Inc., 139 F. Supp. 3d 530, 534 (D.P.R. 2015) (citing United States v. Smith, 499 U.S. 160, 163 (1991)). The Federally Supported Health Centers Assistance Acts ("FSHCAA") extended the federal government's sovereign immunity protection under the FTCA to "federally supported health centers, their employees, and certain contractors [] deemed to be employees of the Public Health Service [("PHS")]." Id. (quoting Ismie Mut. Ins. Co. v. U.S. Dep't of Health & Hum. Servs., 413 F. Supp. 2d 954, 955 (N.D. Ill. 2006) (citing 42 U.S.C. § 233(g)(1)(A))); see also § 330 of the PHS Act (42 U.S.C. § 254b), as amended. It is the Secretary of Health and Human Services ("HHS") who "deem[s]" an entity or individual a federal employee of the PHS. [ECF No. 2 ¶ 5; Opp'n at 10]. "Once a person is deemed an employee of the [PHS], the FTCA provides the exclusive remedy for alleged malpractice." Olivera-Pagan, 139 F. Supp. 3d at 534 (quoting Ismie, 413 F. Supp. 2d at 956 (citing 42 U.S.C. § 233(a))). Thus, the only remedy for claims arising from the negligent or wrongful conduct of "federally supported health centers [and] their employees," [id.], acting within the scope of their employment is against the United States. See 28 U.S.C. § 2679(b)(1).

According to the Opposition Parties, Harbor Health operates two different programs: the health centers and the PACE or ESP program. [Opp'n at 7]. While employees of the health

4

centers are considered employees of the PHS, PACE employees are not. [Id. at 4–6]. The Opposition Parties further assert that CMS, which administers PACE, is not part of PHS. [Id. at 6]. In their view, because Ms. Russell was a participant in the PACE program, and the services provided to her by Harbor Health and Dr. Bhatia were rendered through that program, their conduct is not shielded from liability by the FTCA. [Id. at 2].

Dr. Bhatia and Harbor Health respond that the Opposition Parties' argument is "a fundamental mistake of fact," indicating that they "do not understand what Harbor Health's ESP program is or how PACE programs operate." [Reply at 8]. They maintain that there is no separation between Harbor Health's provision of medical services via its health centers and ESP or PACE, and that the care provided to Ms. Russell fell squarely within Harbor Health's federally approved activities. [Id. at 8, 12]. The Court concurs.

Harbor Health is a single legal entity that operates both the health clinics and the ESP/PACE program. [Reynard Decl. ¶ 10 ("Harbor Health does not have two separate corporate entities, one for its community health centers and another for its PACE program.")]. The Opposition Parties' description of the testimony provided by Gretchen Reynard, Senior Vice President of PACE at Harbor Health,[4] stating that Harbor Health operates "two different branches,"[5] [Opp'n at 7], is decidedly misleading. Reynard did not proffer any testimony as to whether PACE lies outside the scope of Harbor Health's federal certification. [Reply at 10 n.3]. In fact, her testimony indicates the opposite:

---

[4] Reynard was deposed in the state proceedings. [Opp'n at 7].

[5] "When talking about the two branches," the Opposition Parties state, "Ms. Reynard explained that the first 'branch' is the federally qualified health center[,] . . . [and] the second 'branch' is the PACE program." [Opp'n at 7].

> A. Harbor Health Services has sort of two different branches: one, *we are a federally qualified health center* -- so we have several health centers across eastern Massachusetts -- and then there's also, on the other side, a PACE program, and that's the side that I work in.
>
> . . .
>
> Q. What's the Elder Service Plan?
>
> A. It's the PACE – it's just another name for the PACE program.
>
> Q. That's all it is?
>
> A. Yes.
>
> Q. It's another name for the federally funded program?
>
> A. Yes.

[Reynard Dep. Tr. at 8:6–11; 189:14–21 (emphasis added)]. Reynard thus made no distinction between PACE and the health care centers.

Additionally, the PACE/ESP program is included within the scope of the HHS deeming notice, see supra, consistent with the fact that when Harbor Health applied for the notice, it listed the program as one of its proposed services:

> **Description of proposed service delivery sites**
>
> . . .
>
>     **b. Service site accessible and available**
>
> . . .
>
> *Elder Service Plan*
> A Fixed site at our Morton Street location, the *Elder Service Plan is a Program for All-inclusive Care for frail Elders, which includes adult day care, outpatient medical and dental care, pharmacy, in-home care, transportation support, and medical management of hospitalized patients or those living in nursing homes or assisted living facilities*. The Adult Day Care is open Monday through Friday 8:30Am – 4:30PM, and all other services are provided on an as-needed basis, 24/7.

[ECF No. 9-3 ("Application to HHS Health Resources and Services Administration ("HRSA"")) at 25, 27, 29].[6] Harbor Health, in short, included ESP in its deeming application, and, as such, there is no basis for concluding that, when it obtained the deeming notice, the program was excluded from it.

Finally, Dr. Bhatia's employment contract specifies that, as a Harbor Health employee, she "shall provide services to ESP enrollees [such as Ms. Russell]," and expressly states that her malpractice insurance is provided under the FTCA. [ECF No. 9-7 at 3, 8, 9]. Dr. Bhatia's alleged wrongdoing related to Ms. Russell's treatment therefore comes under the purview of the FTCA.

### III.    CONCLUSION

Harbor Health and Dr. Bhatia, at the time of the alleged wrongful acts, had federal employee status and, as such, any claims against them must be brought under the FTCA. Dr. Bhatia and Harbor Health's motion to substitute the United States as Proper Party Defendant is therefore GRANTED.

**SO ORDERED.**

June 17, 2024                                             /s/ Allison D. Burroughs
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE

---

[6] See also [Application to HRSA at 7 (in describing Harbor Health, the application further noted that "[o]ur target population is low income, underserved populations and our service package includes comprehensive primary care, behavioral health, dental, pharmacy, specialty services, HIV care, ancillary services, social services, outreach and other enabling services[,]" and that "[w]e also provide services to frail elders, who are dually eligible for Medicaid and Medicare, through our Elder Services Program located in Mattapan, MA." (emphasis added)].